*622 ATTORNEY DISCIPLINARY PROCEEDINGS
hPER CURIAM. *
This matter arises from one count of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against Blake G. Williams, a currently disbarred attorney.[1] The ODC alleges respondent’s conduct violates Rules 1.15 (safekeeping property of a client or third person), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(b) (commission of a criminal act that reflects adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of Professional Conduct.
UNDERLYING FACTS
Respondent was retained by his aunt, Brenda Mayfield, to obtain the proceeds of life insurance policies covering Mrs. May-field’s daughter, Tangie Thompson, and her grandson, Devyn Thompson, who were murdered on February 4, 1995.[2] Respondent was eventually successful in obtaining $106,193.84 for Mrs. Mayfield. Upon obtaining the settlement checks, respondent forged his client’s endorsement and deposited the funds into his trust account. Respondent did not remit the funds promptly to his client, nor did he account for the funds. Although some of the settlement was used on the client’s behalf, a substantial amount of the money was converted to respondent’s own use.
I,DISCIPLINARY PROCEEDINGS
After an investigation, the ODC filed one count of formal charges against respondent. Respondent failed to timely answer or to otherwise respond to the charges. Accordingly, no formal hearing was conducted, and the matter was considered on documentary evidence only.

*623
Hearing Committee Recommendation

The hearing committee concluded respondent’s conduct violated Rule 1.15, for failing to hold the client’s property separate from his own, for failing to promptly notify the client of the receipt of the settlement funds, and for failing to promptly remit to the client those funds the client was entitled to receive, and Rule 8.4, for committing what is essentially a criminal act reflecting adversely on respondent’s honesty, trustworthiness, or fitness as a lawyer, for engaging in dishonest and deceitful conduct, and for engaging in conduct prejudicial to the administration of justice.
With respect to the factors listed in Supreme Court Rule XIX, § 10(C), the committee found that respondent violated a duty owed to the client and to the profession, and that respondent’s misconduct was knowing and intentional. Giving respondent every benefit of the doubt, including an alleged (but unwritten and never produced) contingency fee and expenses, the committee found that respondent has caused an actual injury of thousands of dollars to his client. Referring to the ABA’s Standards for Imposing Lawyer Sanctions, the committee found Standard 4.11 suggests disbarment is appropriate when a lawyer knowingly converts client property, causing injury or potential injury to a client. The committee concluded the baseline sanction is disbarment.
The committee found no mitigating factors, but noted the presence of numerous aggravating factors: prior discipline, dishonest or selfish motive, vulnerability of the victim, pattern of misconduct, indifference to making restitution, lack of remorse, and failure to cooperate with the disciplinary proceedings. The committee concluded there is no reason to deviate from the baseline sanction.
Accordingly, the hearing committee recommended that respondent be disbarred. The committee further recommended that all costs of the proceedings be assessed to respondent.[3]
| aDisciplinary Board Recommendation
The disciplinary board concurred in the findings of the hearing committee that respondent is guilty of the misconduct set forth in the formal charges and that the charges were proven by clear and convincing evidence. The board found that respondent has violated duties owed to his clients, the legal system, and the profession, and has engaged in knowing and intentional misconduct. The board agreed there are no mitigating factors present, and found the following aggravating factors: prior discipline, dishonest or selfish motive, pattern of misconduct, failure to cooperate with the disciplinary • proceedings, lack of remorse, and vulnerability of the victim.
Considering the circumstances, the board agreed that disbarment is the baseline sanction under Standard 4.11 of the ABA’s Standards for Imposing Lawyer Sanctions and Louisiana State Bar Ass’n v. Hinrichs, 486 So.2d 116 (La.1986), and concurred with the hearing committee to recommend disbarment. Since respondent is currently disbarred, the board found he technically cannot be disbarred again, although this court has the authority to extend the minimum period of time that must pass before respondent may apply for readmission. Louisiana State Bar *624 Ass’n v. Krasnoff, 502 So.2d 1018 (La. 1987).[4] Accordingly, the board recommended respondent’s disbarment should be extended by another five years, to run from the date of finality of the court’s judgment in this matter. The board further recommended that respondent be assessed with all costs and expenses of these proceedings, with legal interest to commence running thirty days from the date of finality of the court’s judgment until paid.
• Neither respondent nor the ODC objected to the board’s recommendation.
LDISCUSSION
The record clearly supports the findings of the hearing committee and the disciplinary board that respondent lacks the moral fitness necessary to practice law in the State of Louisiana. His actions demonstrate a complete and utter disregard for the welfare of his client, and his actions caused substantial harm to his client.
Accordingly, we accept the disciplinary board’s recommendation of disbarment. Recognizing that respondent is currently disbarred, we will extend the minimum period for readmission for an additional five years from the date of the finality of this judgment.
DECREE
Upon review of the findings and recommendation of the disciplinary board, and considering the record, it is the decision of this court that the recommendation of the disciplinary board be accepted. Accordingly, it is ordered that the minimum period within which Blake G. Williams may seek readmission to the practice of law be extended for a period of five years, commencing from the finality of this judgment. Respondent is further ordered to make restitution to his client. All costs and expenses of these proceedings are assessed to respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence running thirty days from the date of finality of judgment until paid.

 Victory, J. not on panel. Rule IV, Part II, § 3.

. On July 2, 1998, this court disbarred respondent for misconduct involving the conversion of client funds. See In re: Williams, 98-1119 (La.7/2/98), 714 So.2d 699.

. Tangie Thompson’s life insurance policy named her former husband, Bennie Thompson, as beneficiary. At the time of the murder, Mr. Thompson owed money to his former wife, and an agreement was entered into whereby a portion of the life insurance proceeds were paid to Ms. Thompson’s succession in satisfaction of the debt. Mrs. May-field, who was the executrix of her daughter’s succession, hired respondent to handle this matter.

. After the hearing committee made its recommendation, the ODC supplemented the record with the report of Ronald White, an audit consultant who was retained to prepare a schedule of respondent's trust account activity. White concluded that respondent deposited the Thompson insurance settlement proceeds into his trust account on April 28, 1995, and spent the money within one month. Although some of the disbursements from the account were made on behalf of Ms. Thompson’s succession, White noted that there were "a vast number of disbursements which were of a truly personal nature,” including a $5,000 check payable to Little Zion Baptist Church (with the notation "tithes and offering”), and a $15,000 check payable to respondent, with a notation indicating that the check was used to purchase a certificate of deposit to secure a personal loan.

. In Krasnoff, this court concluded it was appropriate to extend the period within which a disbarred attorney could apply for reinstatement:
Clearly the provision requires a mandatory minimum period of five years before a disbarred attorney may petition for reinstatement. As this is only a minimum requirement, we are free to extend such period as appears appropriate in the circumstances. After carefully considering the options available, and the suggestions made by the Committee on Professional Responsibility, we conclude the proper disciplinary penalty to be assessed against Respondent is an extension of the minimum five year period which must expire before he may apply for reinstatement to the practice of law.